## MEISTER v KILBURY
## ARCHER v KILBURY
## SECURITY SAV BK & TR CO. v WINTERS

Ohio Appeals, 6th Dist, Lucas Co
No 2268, 69 & 70. Decided Jan. 20, 1930

Cotter & McFellin, and Wm. H. McFellin, all of Toledo, for Meister.

Leroy W. Hunt and Orion W. Nelson, both of Toledo, for Kilbury.

CUSHING, PJ, ROSS & HAMILTON, JJ, (1st Dist) sitting.

HAMILTON, J.

The petition challenges the constitutionality of the sections of the statute, but since that point is not stressed, we see no reason for holding the sections unconstitutional. It was within the power of the legislature to enact the statutes in question under the police power involving public welfare, health, and sanitation. If authority is needed, we cite the cases of **County of Miami, et al v. City of Dayton, et al, and State ex rel Duncan, etc. v. Franklin County Conservancy District, 92 Oh St 215.**

The petition alleges some 65 specifications or suggestions as to why this assessment is invalid. However, but 7 proposi-

120

tions are argued, and these propositions in fact but present 3 questions for determination:

**First:** Did the published notice which was headed **"Local** Sanitary Sewer No. 40 (Point Place Addition)" instead of **"Main** Sanitary Sewer No. 40 (Point Place Addition)", as provided for in the resolution, invalidate the notice?

**Second:** Was the second or amended and modified assessment such an amendment or modification as would mean a scrapping of the first assessment, which was published, and make an entirely new one, which would require a new publication, which was not done?

**Third:** What effect did the supplemental contract for the construction of sewers in certain subdivisions have on the general plans or original contract?

These propositions will be discussed seriatim.

The record discloses that the resolution ordering publication headed the notice ordered published "An Improvement Known as Main Sanitary Sewer No. 40 (Point Place Addition) in Lucas County, Ohio, Main Sanitary Sewer District No. 7."

The error in the use of the word "local" instead of "main" must have been a typographical error, since the record shows the notice ordered published did use the word "main" and not "local". But there is no special significance, however, in the use of the word "local" instead of "main", since the notice did say it was "Sanitary Sewer No. 40 (Point Place Addition) in Lucas County, Ohio, Main Sanitary Sewer District No. 7", and contained the lots and parcels of land to be assessed, giving the names of the parties interested, and we hold that this slight typographical reror will not invalidate the assessment.

Another objection is made to the notice in that it states: "Objections to said estimated assessments shall be in writing and filed with this Board not later than the 18th day of October, 1924, and will be for hearing at the office of the County Commissioners in the Court House of Lucas County, Ohio, at 10 o'clock A. M. (Eastern Time) on the 27th day of October, 1924."

It is argued that the date of the last publication was October 9, 1924, and since the law gave 10 days from the date of the last publication in which to file objections, the fixing of the 18th day of October did not give the full 10 days, and was, for that reason, not a valid notice. The answer to this is, that the law fixes the rights of the parties and gives them 10 days within which to file objections. The fact that the Board stated a certain day in the notice would not affect the rights of the parties under the law to appear within the 10 days and file objections. The notice did state that objections would be for hearing on the 27th day of October, which was more than 10 days from the date of the last publication, in fact 18 days thereafter.

There is nothing in the record to show that anyone was barred from filing complaints or objections by reason of the date fixed in the notice. Indeed the date fixed in the notice was not necessary, and could have no effect on the objectors nor on the board in regard to the filing and hearing of objections, the law, of which all are bound to take notice, fixes that time.

Therefore, in so far as the publication of notice is concerned, we find no valid objection and the assessment will not be disturbed in so far as the publication of the notice of this first assessment (so designated) is concerned.

Was the amended or modified assessment a new assessment requiring a new publication? It was not published. The claim of the defendants is that they were acting within the law when they made the amended, modified assessment after the hearing, in which it was determined such should be made.

Counsel for plaintiffs in their brief continually speak of the estimated assessment of the sanitary engineer, claiming that the sanitary engineer had not power to do certain things.

Our view of the law is that the sanitary engineer is merely the legally authorized statistician for the county commissioners in matters pertaining to sanitary sewers, and the act of the assessment is the act of the commissioners and of the commissioners alone. They are not bound by the report of the sanitary engineer. It is the duty of the commissioners to make and approve an estimated assessment as near and according to benefits as possible. Where they may secure the evidence and the information in arriving at that conclusion is not provided by the law, and is not limited to the action of the sanitary engineer. The action of the county commissioners in approving the estimated assessment makes the estimated assessment the action of the commissioners, so that we see no reason for arguing any proposition of law as to what the sanitary engineer did. The commissioners could approve or

disapprove the basic calculations of the engineer. They might make their own calculations in so far as amendments or modifications are concerned. The law is, as set forth in **section 6602-8B:**

"x x x At the time and place designated for such hearing (objections), or at other time or times to which such hearing may be adjourned, the board shall consider any such objections and hear and consider any competent evidence concerning any such objections, and shall determine any questions involved and may, if deemed proper, amend such estimated assessment and shall approve and confirm the same as made or as so amended, and, when so confirmed, the same shall be final and conclusive."

Nowhere is it suggested that the county sanitary engineer shall make these amendments or modifications, and if the county commissioners used his mathematical skill in making what they deemed to be proper amendments, it was their act, and they were within the provisions of the law above quoted.

It is argued that this was not an amendment, but a new assessment, because of the fact that some properties were relieved from payment of the assessment and that these assessments were spread over the remainder of the district, so that it affected the whole district, and was not an amendment, but the making of a new assessment.

We cannot agree with this proposition. The commissioners had the right to amend and modify the estimated assessment. The whole cost of the improvement must be paid for from the assessable property in the district. If it was found that some property was assessed in excess of its benefits, it was the duty of the commissioners on hearing the objections and making the amendments, to relieve against these excess amendments. Then what should be done with the amount of the reduction? There remained but one thing to do, and that was to spread the excess assessments over the remainder of the district. This is not the making of a new assessment. This is an amendment or modification in which the commissioners proceeded under the law.

The law does not require further publication of notice. The parties having been notified, they are bound to take notice of all actions thereunder at the meetings held for the purpose of considering the objections and the adjourned meetings, which the law requires to be fixed, at which all the parties complaining could be heard. The statutes place no limitation on the commissioners in the making of amendments of the assessments if the amendments are according to benefits and do not make the assessment exceed the cost of the improvement.

Our attention has been called to the case of **Village of Maple Heights v. Holtz, etc., 100 Oh St 264,** on the question of the necessity for re-publication of notice. That decision affords no authority in these cases, for the reason that, in the Holtz case it was found that the cost of the improvement largely exceeded the estimated cost, and it was thereupon sought to add to special assessments an additional second assessment to pay this excessive cost. In the cases under consideration there was no excessive cost. The only proposition was a readjustment of the estimated assessment to cover the estimated cost.

We are therefore of the opinion that the law was fully complied with in the publication of the notice in the original estimated assessment, and the amendment was authorized without additional publication.

This leads us to the question of the amended or supplemental contract for sewerage of certaing subdivisions.

It appears that while these subdivisions were included in Sanitary Sewer District No. 7, they were not originally included in the improvement under consideration, to-wit: "Main Sanitary Sewer No. 40 (Point Place Addition) Lucas County, Ohio, Main Sanitary Sewer District No. 7." These subdivisions were known as Wild Cherry Beach, Edgemont Beach, Carland Beach, Carland Orchard, Thurstin Beach, Lincoln Beach, and Oakview Beach. In passing, it may be well to state that the greater number of the plaintiffs in these places were proprietors and owners in these subdivisions. After the letting of the contract for Sanitary Sewer No. 40, and on November 16, 1922, the owners of these subdivisions and the properties therein filed with the county commissioners the following request:

"Toledo, Ohio, November 16th, 1922.
Hon. Board of Commissioners,
Lucas County, Ohio.
Gentlemen:

We, the undersigned owners of all the lots, namely from 1 to 91, both inclusive, in Oakview Beach, a subdivision of Washington Township, Lucas County, Ohio, respectfully petition your Hon. Body to amend your Sewer Contract No. 40 with The Lake Erie Construction Company, to include sew-

erage in our above mentioned property.

"We make this request in order that our property may receive the benefits of the above improvement at their contract price. We also understand that our property will pay its pro-ratio share of the cost of the above improvement.

Inasmuch as we are within our legal rights, we respectfully request your earliest attention."

Each of the several subdivision owners filed such requests, duly signed, and thereupon the Board, by appropriate legislation, provided for the construction of these laterals in these subdivisions, and, on February 28, 1923, entered into a contract with the original contractors for their construction, at the same unit rates as provided in the original contract.

It will be noted that the petition signed by these parties contains the language: "We x x x respectfully petition your Hon. Body to amend your Sewer Contract No. 40 with The Lake Erie Construction Company to include sewerage in our above mentioned property." They filed the petitions in order that they might receive the benefit of the improvement. They requested that their property "pay its pro-ratio share of the cost of the above improvement." Having secured the improvement upon the good faith and requests so made, and having secured the benefit of the sewer for their subdivisions as a part of the main contract in the construction of the sanitary sewer No. 40, giving them an adequate outlet for sewerage for their entire subdivisions, they now seek to defeat paying for the same by reason of some technicality in the procedure. Many cases go far beyond the state of facts presented here in which relief has been denied. The action of these subdivision owners does not appeal to the chancellor in an equity proceeding. While it is true that some of the plaintiffs who raise this question are not owners of property in the subdivisions, they do not appeal to the chancellor, for the reason that the undisputed evidence is, that in the estimated assessment, approved and confirmed, the construction of these additional laterals in these subdivisions made under the supplemental contract does not increase the cost to the land owners outside of these seven subdivisions. How then are any of the parties injured in a way to complain to a court of equity? That the owners of the property in the subdivisions are estopped cannot be gainsaid: that if the parties outside of the subdivisions are not injured, nor

the cost of the improvement to their property increased, how can they complain, since they are not injured? Moreover, **section 6602-5** provides:

"Whenever it becomes necessary, in the opinion of such board, in the prosecution of any such work or improvements, to make alterations or modifications in such contract, such alteration or modifications shall only be made by such board by resolution, and such resolution shall be of no effect until the prices to be paid for work or material or both, caused by such alteration or modifications, shall have been agreed upon in writing, and signed by the contractor and said board, x x"

It is argued that the construction of these lateral sewers in these subdivisions was not an alteration or modification, but was a new construction; that if such construction should be held to be a modification or alteration, then there would be no limit to additional construction that might be made by the commissioners without advertising, and cite a holding of the court to the effect that if they could, by modification or alteration, make new construction, they might extend a seven mile pike to a twenty mile pike by modification or alteration. That illustration is not convincing here, for the reason that the construction of these laterals was within sanitary sewer district No. 7. These properties were adjacent to the improvement, and were subdivided town lots, in which sewerage was necessary. At the time of the commencement of the proceeding for the improvement under consideration, these subdivisions were, at least in part, acreages, and the subdividing took place pending the construction of the improvement. We are mentioning this to show that the question of modification or alteration in a contract for improvement is a matter of sound discretion on the part of the commissioners, based upon the facts in each particular case. These commissioners followed strictly the provisions of the law as to the passing of the necessary legislation and the agreement on the price to be paid for the laterals in question, and the same was agreed to and signed by the contractor and the commissioners.

So that, under the statute, we are of opinion that the commissioners proceeded under the law.

There are several minor questions raised which we do not consider of importance, and which wuold but extend this memorandum to an undue length.

Our conclusion is that the assessment is valid under the issues made in these cases.

We are not passing upon the right of any property holder to challenge the assessment as to his or her property, on the ground that the assessment exceeds the benefits to the property. That question is not raised in these cases, and if necessary for that purpose, we will reserve the right of individual property owners to challenge the assessment in so far as their property is concerned on the proposition that the assessment exceeds the benefits.

A decree may be presented in each of the cases in accordance with this opinion.

Cushing, PJ, and Ross, J, concur.